# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF VANDALIA, ILLINOIS; VANDALIA RAILROAD COMPANY; and SCOTT WISNASKY, *as next of kin and administrator of the estates of DR.W. (deceased) and A.W. (deceased), as administrator of the estate of ALYSSA SEWELL (deceased), as father and next of friend of DY. W. who is a minor and as father and next friend of DA. W. who is a minor,* <br><br> Defendants. | Case No.  17-cv-1536 <br><br> Honorable Joe B. McDade |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 14) and Defendant City of Vandalia's Rule 56(d) Motion to Take Discovery to Further Respond to Plaintiff Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 17). The motions have been fully briefed and await disposition. For the reasons stated below, Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 14) is GRANTED and City of Vandalia's Rule 56(d) Motion to Take Discovery to Further Respond to Plaintiff Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 17) is DENIED.

1

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the non-movant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the non-movant may not simply rest on his or her allegations in the complaint. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

Rule 56(b) provides that in general, a party may file a motion for summary judgment at any time after the case is initiated until thirty days after the close of discovery. Thus, discovery need not be completed before a party can move for

summary judgment. Fed. R. Civ. P. 56(b); *Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 729 (7th Cir. 1986). The drafters of the Federal Rules foresaw instances where parties would move for summary judgment prematurely and to safeguard against such premature motions they included sub-paragraph (d). *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994) (dealing with then codified Rule 56 (f)). The provisions of Rule 56(f) were moved to subsection (d) in 2010 "without any substantial changes." 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740 (3d ed. 2014). This provision allows a non-movant to demonstrate to the Court by giving specific reasons in an affidavit or declaration that the non-movant cannot present facts necessary to oppose the motion. *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). Upon such a showing, the Court is empowered to defer ruling on the summary judgment motion or deny it; allow a continuance so the nonmovant can obtain the necessary materials to oppose the summary judgment motion; or issue any order the court deems appropriate. Fed. R. Civ. P. 56(d).

## BACKGROUND

**Undisputed Facts**

Liberty Surplus Insurance Corporation (hereinafter "Liberty") issued to Pioneer Railcorp Railroad (hereinafter "Pioneer") Liability Insurance Policy No. RRHV372358-2, effective July 7, 2014 to August 20, 2015 (hereinafter the "Policy"). Vandalia Railroad Company (hereinafter "VRRC") is a Named Insured under the Policy. The Policy affords coverage under its various insuring agreements for persons or organizations who qualify as "insureds." The Policy states that "[the] word 'Insured' means any person or organization qualifying as such under WHO IS

3

AN INSURED (Section IV.)." Under Section IV, Paragraph 5 of the Policy, an insured includes "[a]ny person or organization to whom or to which [VRRC is] obligated by an insured contract to provide insurance of the type afforded by this policy, but only in connection with [VRRC's] business." Vandalia owns a portion of railway known as the Vandalia Segment. VRRC leases the Vandalia Segment from the City pursuant to a Railway Redevelopment Lease Agreement (the "Lease"), initially effective September 19, 1983. The Lease states that "[VRRC] shall provide public liability and property damage insurance as required by the regulations of the Interstate Commerce Commission [("ICC")] or any successor agency to such commission." Vandalia claims it is an insured under the Policy by way of Section IV, Paragraph 5.

**Facts Not In Dispute But Not Identified As Undisputed By The Parties**

Scott Wisnasky sued Pioneer, Vandalia, VRRC and several others for several tort claims arising out of the deaths and serious bodily harm of several of Mr. Wisnasky's children. The children were passengers in a vehicle that collided with a train. Several defendants to the underlying state lawsuit were nonsuited, yet Vandalia remains. Vandalia tendered the underlying lawsuit to Liberty for defense and indemnity under the Policy. Liberty denies that it owes a duty to defend or indemnify Vandalia for the underlying lawsuit under the Policy.

**Disputed Facts Material to an Issue Before The Court**

Marsh USA Inc. issued several certificates of insurance to Vandalia. These certificates purported to certify that the policies of insurance listed on the certificate, the Policy being one of them, had been issued to the insured named

4

above, VRRC, for the policy period indicated on the certificate. Each certificate carried the following message across the front of it at the top of the certificate:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THE CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

However, each certificate also named Vandalia as an additional insured to the Liberty respective policy as well.

## DISCUSSION

### I. Vandalia's Estoppel Theory Is Futile So The Motion To Stay Is Denied.

Vandalia has moved under Federal Rule of Civil Procedure 56(d) to take discovery to further respond to Liberty's motion for summary judgment. Initially, Vandalia claimed that it sought to establish an estoppel defense based upon the certificates of insurance that Marsh issued to it, but in its reply in support of its motion, Vandalia now states there are other equitable defenses it should be allowed to unearth facts in support thereof, such as waiver. Vandalia did not identify any equitable defenses in its Answer, and only now speculates whether other equitable defenses exist to support its claims. Liberty contends that additional discovery is unnecessary because an estoppel defense is futile.

The Court will not allow Vandalia to simply make references to possible theories in hopes of staving off summary judgment. Vandalia moved to stay summary judgment proceedings and allow for more discovery on the ground that

5

there may be colorable evidence to support an estoppel theory, so that is the only issue the Court will now consider.

The first and foremost question is whether Illinois law recognizes a coverage by estoppel theory of the sort Vandalia attempts to press forward here. Vandalia has not produced a single Illinois authority in support of its theory that Marsh's issuance of certificates of insurance bind Liberty to insure Vandalia under VRRC's Policy for the Wisnasky lawsuit.

"[A] United States district court sitting in diversity, *see* 28 U.S.C. § 1332, must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). "In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *ADT Soc. Servs., Inc. v. Lisle–Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).

The most applicable state appellate court opinion on this issue is *Midwest Family Mut. Ins. Co. v. Walsh Const. Co.*, 2015 IL App (1st) 133420-U. Despite the fact that this decision is an unpublished order filed under Illinois Supreme Court Rule 23, the Court believes it gives better insight into how the Illinois Supreme Court would treat Vandalia's coverage by estoppel theory than any other alternative source, including decisions from other jurisdictions applying non-Illinois law.

In *Midwest*, an insurer brought an action against a general contractor and a subcontractor, seeking a declaration that the general contractor was not covered

under the subcontractor's commercial general liability policy. 2015 IL App (1st) 133420-U at ¶¶ 1-7. The general contractor asserted a counterclaim of promissory estoppel alleging that a third-party, similar to Marsh here, issued a certificate of insurance to the general contractor that listed it as an additional insured under the policy. *Id.* at ¶ 59. The appellate court ruled that the trial court's grant of summary judgment to the insurer was proper for several reasons, one of which was that "the certificate of insurance was not an insurance contract." *Id.* at ¶ 62 citing *Clarendon American Ins. Co. v. Aargus Security Systems, Inc.*, 870 N.E.2d 988 (Ill. App. Ct. 1st Dist. 2007). Another reason given by the appellate court was that Illinois courts have held that holders of certificates of insurance, such as Vandalia here, cannot reasonably rely on such certificates in order to establish that they are additional insureds under policies. *Id.* at ¶ 63 citing *Westfield Ins. Co. v. FCL Builders, Inc.,* 948 N.E.2d 115 (Ill. App. Ct. 1st Dist. 2011); *United Stationers Supply Co. v. Zurich American Ins. Co.,* 896 N.E.2d 425, 437 (Ill. App. Ct. 1st Dist. 2008) ("where the certificate refers to the policy and expressly disclaims any coverage other than that contained in the policy itself, the policy should govern the extent and terms of the coverage").

In *United Stationers Supply Co.*, the certificate of insurance at issue there was very similar to the one here. There, the certificate stated it was "issued as a matter of information only and confer[ed] no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." 896 N.E.2d at 430. Here, the certificate provides at the top of the first page:

7

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THE CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

(*See*, *e.g.*, Doc. 16-1 at 4-18). Also there, as here, the certificate indicated the certificate holder was an additional insured. (*See*, *e.g.*, *id.*). Despite that language however, the *United Stationers* court held as a matter of law that the party seeking coverage was not an additional insured under the policy and that the disclaimer language in the certificate of insurance put that party on notice that the policy language alone, and not the certificate, governed coverage of additional insureds. 896 N.E.2d at 439. Although *United Stationers* does not deal with estoppel directly, it definitely provides an understanding of how Illinois courts treat certificates of insurance that contain disclaimer language such as the certificate here and is persuasive to the Court on the issue of reliance.

"Reasonable reliance" is an element of equitable estoppel, *Horn v. Goodman*, 2016 IL App (3d) 150339, ¶ 14, 60 N.E.3d 922, 927, and "expected, foreseeable reliance" is an element of promissory estoppel, *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009). Regardless of whether one uses the term "reasonable" or "expected, foreseeable", this Court does not believe Vandalia was justified to rely upon the Marsh issued certificate of insurance. First, the case law cited above does not support such reliance, *see*, *e.g.*, *Clarendon American Ins. Co.*, 870 N.E.2d 988, *Westfield Ins. Co.,* 948 N.E.2d 115, and *United*

*Stationers Supply Co.,* 896 N.E.2d 425. Second, the certificates themselves state on their face they confer no rights on the certificate holder and do not amend, extend or alter the coverage afforded by the policies listed in the certificate. The Court finds that any such reliance upon the certificates of insurance issued by Marsh was unreasonable and not expected or foreseeable.

For these reasons, the Court finds that Vandalia cannot make use of a coverage by estoppel theory predicated on the certificates of insurance issued by Marsh. Therefore, additional discovery of facts bearing on the issue would be futile and therefore, wasteful. Vandalia's Rule 56(d) Motion to Take Discovery to Further Respond to Plaintiff Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 17) is denied.

II. **Vandalia is Not An Insured Under the Policy.**

Illinois law provides that it is the burden of the insured to prove its coverage claim falls within the coverage of an insurance policy. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). The interpretation of an insurance policy is a question of law that can be disposed of without a trial. *See Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 719 (7th Cir. 2006) ("In Illinois, the interpretation of an insurance policy is a question of law. *See, e.g., Zurich Ins. Co. v. Walsh Constr. Co. of Ill., Inc.,* 816 N.E.2d 801, 805 (2004)").

The Policy states that "[the] word 'Insured' means any person or organization qualifying as such under WHO IS AN INSURED (Section IV.)." Under Section IV, Paragraph 5—WHO IS AN INSURED—an insured includes, "[a]ny person or organization to whom or to which [VRRC is] obligated by an insured contract to

9

provide insurance of the type afforded by this policy, but only in connection with [VRRC's] business." Vandalia is not a Named Insured under the Policy. Nevertheless, Vandalia claims that by operation of the Lease and Section IV, Paragraph 5 of the Policy, it is an insured under the Policy.

The Lease provides "[VRRC] shall provide public liability and property damage insurance <u>as required by regulations of the Interstate Commerce Commission or any successor agency to such commission</u>." (Doc. 1-1 at 6 (emphasis added)). Liberty claims that because the applicable regulations do not require VRRC to purchase insurance, VRRC was not under any obligation to buy such insurance and Vandalia cannot establish it is an insured through Section IV, Paragraph 5 of the Policy.

So, it seems to the Court that the relevant question is whether Vandalia can produce any evidence that the federal regulations applicable to the Interstate Commerce Commission ("ICC") or any successor agency, required VRRC to purchase public liability and property damage insurance. Liberty asserted in its Complaint that neither the ICC nor any successor agency requires insurance of the type afforded by the Policy. (Doc. 1 at ¶ 42). Vandalia denied that allegation while VRRC admitted it. (Doc. 12 at ¶ 42; Doc. 11 at ¶ 42).

The Lease was commenced in 1983. The ICC was abolished in 1996. The Surface Transportation Board succeeded the ICC. Its website provides "the remaining railroad and certain non-rail functions [of the ICC] were transferred to the newly established Surface Transportation Board; and the remaining motor carrier (trucking) functions, including many matters relating to the movement of

household goods, were transferred to the U.S. Department of Transportation." (available at https://www.stb.gov/stb/public/resources_icc.html.)

Liberty points to current federal regulations that require "motor carriers" to maintain certain insurance but maintains that railroads are not "motor carriers" and no such requirements apply to railroads. Liberty is correct that Part 49, Section 387.301 of the Code of Federal Regulation requires "motor carriers" to maintain insurance in amounts prescribed by Section 387.303, but it does not define the term "motor carrier". A motor carrier is defined throughout the Code of Federal Regulations as "a for-hire motor carrier or private motor carrier including a motor carrier's agents, officers, or representatives responsible for hiring, supervising, training, assigning, or dispatching a driver or concerned with the installation, inspection, and maintenance of motor vehicle equipment or accessories or both. *See, e.g.*, 49 C.F.R. §§ 350.105 and 390.5. The Federal Motor Carrier Safety Administration defines a motor carrier as something that transports passengers or property for compensation. This Court has looked over the Code of Regulation and has found nothing to suggest that railroads are to be treated as motor carriers. Moreover, the passage quoted above from the Surface Transportation Board definitely suggests that railroads are not motor carriers because it stated that "railroad and certain non-rail functions [of the ICC] were transferred to the newly established Surface Transportation Board" while "the remaining motor carrier (trucking) functions were transferred to the U.S. Department of Transportation." Thus, the Surface Transportation Board certainly treats railroads as distinct from motor carriers.

Vandalia has not produced anything that even hints federal regulations require railroads to purchase public liability and property damage insurance. It argues that Liberty's simple statement that no regulations exist that obligate railroads to purchase public liability and property damage insurance is insufficient to secure summary judgment. Vandalia also hints that VRRC's admission to Liberty's allegation that neither the ICC nor any successor agency requires insurance of the type afforded by the Policy is self-serving and should be ignored. Vandalia ignores that it has the burden as the purported insured to prove its coverage claim falls within the coverage of an insurance policy. *Fay*, 905 N.E.2d at 752.

As for its obligations under Rule 56, Liberty was required to cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), <u>admissions</u>, interrogatory answers, or other materials," to support its assertion that it cannot be genuinely disputed that federal regulations do not require purchase public liability and property damage insurance. Fed. R. Civ. Pro. 56(c)(1)(A) (emphasis added). Surely, VRRC's admission suffices as an appropriate citation in support of Liberty's summary judgment motion. A moving party can obtain summary judgment by simply pointing the court to the total absence of evidence supporting one element of a non-movant's claim, if the non-movant will bear the burden of proof on that claim at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and

admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule,' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'); *see also Cole v. Janssen Pharm., Inc.*, No. 15-CV-57, 2017 WL 6372777, at *3 (E.D. Wis. Dec. 12, 2017) interpreting *Celotex Corp.*, 477 U.S. 317, 322-24 ("There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is <u>not required to prove a negative in order to make a prima facie showing for summary judgment</u>." (emphasis added)).

Vandalia cited two cases in support of two propositions: the first proposition is that summary judgment should not be granted unless the non-moving party cannot prevail under any discernable circumstances, *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1331 (7th Cir. 1986), and the second proposition is that summary judgment should not be granted unless "the movant has established its right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978). These citations and the propositions they purportedly support are not well received. The citation to *Bonds* was in a mere concurrence/dissent, not the Court's actual opinion, which is the law. Furthermore, the *EEOC* case, from the Eighth Circuit and upon which the *Bonds* court relied, predates the seminal cases of *Celotex Corp.*, 477 U.S. 317 and

*Anderson*, 477 U.S. 242, which were decided in 1986 and thus was made without the benefit of the Supreme Court's pronouncements of proper procedure under Rule 56.

Vandalia's last retort is that "[i]f neither the ICC or the STB requires that railroads procure liability insurance, it is not at all clear why the Lease provides, in pertinent part: "LESSEE shall provide public liability and property damage insurance as required by regulations of the Interstate Commerce Commission or any successor agency to such commission."' (Doc. 16 at 13). The Court does not know what to make of this argument. It is just as easy to say the drafters of the Lease did a poor job of drafting as it is to say that there is any significance to be taken from the Lease requiring insurance on a condition that does not exist. Indeed, if the Lease required the lessee to have public liability and property damage insurance unconditionally, the Lease could have been drafted by omitting the language "as required by regulations of the Interstate Commerce Commission or any successor agency to such commission."; but it was not so drafted. So the Court is not now going to overlook the fact that Vandalia cannot (or at least has not) cited to a single federal regulation requiring such insurance.

Taking the foregoing into consideration, the Court finds that Liberty carried its burden of showing there are no genuine issue of material fact as to whether federal regulations requiring railroads to purchase public liability and property damage insurance exist. The burden then shifted to Vandalia to show through specific evidence that a triable issue of fact remained on the issue. *See Warsco*, 258 F.3d at 563 (citing *Celotex Corp.*, 477 U.S. 317 at 324). It has failed to do so. Therefore, summary judgment is appropriate on the issue of whether federal

14

regulations require railroads to purchase public liability and property damage insurance. The Court finds no such regulations exist, and consequently, the Court finds Vandalia is not an insured through operation of Section IV, Paragraph 5 of the Policy.

### III. The Policy Contains No Duty To Defend.

Since, Vandalia is not an insured under the Policy, Liberty has no duty to defend or indemnify[1] Vandalia under the Policy. But even if this Court were wrong in its analysis above and Vandalia is an insured under the Policy, Liberty would still have no duty to defend Vandalia in the underlying Wisnasky lawsuit. The Policy states Liberty has "the right, but not the duty or obligation, to defend" claims or suits against an insured. (Doc. 1-3 at 19). That language is unambiguous and can only be taken to mean Liberty can defend a claim or suit submitted to it by an insured but has no obligation to do so.

### CONCLUSION

In conclusion, for the reasons stated above, Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 14) is GRANTED and City of Vandalia's Rule 56(d) Motion to Take Discovery to Further Respond to Plaintiff Liberty Surplus Insurance Corporation's Motion for Summary Judgment (Doc. 17) is DENIED.

---

[1] In Illinois, the law holds that "if an insurer owes no duty to defend, it owes no duty to indemnify." *Metzger v. Country Mut. Ins. Co.*, 2013 IL App (2d Dist.) 120133, ¶ 19, 986 N.E.2d 756, 761; *see also Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1184 (7th Cir. 1980) ("If the broader duty to defend has not been triggered, it is because the underlying action is not potentially within the coverage of the policy, and there could be, as a practical matter, no duty to indemnify in such a situation.").

It is hereby ORDERED:

1. The City of Vandalia is not an insured under Pioneer Railcorp Railroad Liability Insurance Policy No. RRHV372358-2, effective July 7, 2014 to August 20, 2015;

2. Liberty Surplus Insurance Corporation has no duty to defend or indemnify the City of Vandalia in connection with the underlying lawsuit, 2015 L 15, *Wisnasky v. CSX Transportation Inc., et. al.*, now pending in the Fourth Judicial Circuit of Illinois, Fayette County;

3. Liberty Surplus Insurance Corporation has no duty under Pioneer Railcorp Railroad Liability Insurance Policy No. RRHV372358-2, effective July 7, 2014 to August 20, 2015, to pay any person for sums which the City of Vandalia may be legally obligated to pay such persons as a result of the underlying lawsuit, 2015 L 15, *Wisnasky v. CSX Transportation Inc., et. al.*, now pending in the Fourth Judicial Circuit of Illinois, Fayette County;

4. Case Terminated.

SO ORDERED.

Entered this <u>7th</u> day of June, 2018.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
